01
02
03
04
05
06
07
08
09
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| WILLIAM B. GREENE, | ) | CASE NO. C08-0040-RSL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JEFFREY UTTECHT, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner William Greene is currently incarcerated at the Washington State Penitentiary in Walla Walla pursuant to a judgment and sentence of the Snohomish County Superior Court. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his current confinement.  Respondent has filed an answer to the petition together with relevant portions of the state court record, and petitioner has filed a response to respondent's answer.  The briefing is now complete and this matter is ripe for review.  The Court, having reviewed the briefing of the parties, and the balance of the record, concludes that petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE -1

01                              FACTUAL AND PROCEDURAL HISTORY

02          Petitioner, by way of the instant habeas petition, seeks to challenge his 2003 conviction

03  in Snohomish County Superior Court on charges of first degree kidnapping and indecent liberties.

04  Petitioner was originally convicted of these charges in 1995 and was sentenced to life

05  imprisonment without the possibility of parole as a "persistent offender" pursuant to RCW

06  9.94A.120(4).  (*See* Dkt. No. 15, Ex. 2 at 152-153.)  However, petitioner's original convictions

07  were overturned on federal habeas review.    *See Greene v. Lambert*, C00-938-MJP; *Greene v.*

08  *Lambert*, 288 F.3d 1081 (9th Cir. 2001).

09          Petitioner was re-tried on the kidnapping and indecent liberty charges, and was once again

10  convicted and sentenced to life imprisonment without the possibility of parole as a "persistent

11  offender" pursuant to RCW 9.94A.120(4). (  *See* Dkt. No. 15, Ex. 1.)  Petitioner once again

12  appealed his convictions to the Washington Court of Appeals.

13          The Court of Appeals summarized the facts of petitioner's offenses, and the relevant

14  procedural history and trial proceedings as follows:

15              After William Bergen (Bill) Greene's 1988 conviction for indecent liberties,
           he participated in a sexual offender treatment program at the Twin Rivers Corrections
16         Center (Twin Rivers).  One of Greene's therapists was M.S., a psychiatric nurse.
           During the course of therapy, M.S. came to believe that Greene had Dissociative
17         Identity Disorder (DID).  M.S. persuaded Twin Rivers treatment providers that
           Greene should be evaluated for DID.
18
               In 1991, after some testing, Greene was diagnosed as "rule out" DID, meaning
19         that Greene met some, but not all, of the criteria for a DID diagnosis.  The Twin
           Rivers treatment providers decided that although the diagnosis was not definitive,
20         Greene should be treated as if he had DID.

21             An individual suffering from DID has a non-integrative identity divided
           between the primary identity (host) and at least one alternative identity or identity
22         fragment (the alter(s)).  This lack of integration results in debilitating ruptures in the

REPORT AND RECOMMENDATION
PAGE -2

patient's personality, behavior, thought, and memory.  DID is a pathologically repressed coping mechanism that allows a traumatized individual to "find lifesaving retreat in an altered phenomenal state, in much the way that a hypnotized person is able–not to escape pain–but to disassociate from the experience of pain."

The heterogeneity of alters (e.g., gender, age, race, sexual orientation, etc.) and their modes of coexisting with the host (e.g., co-conscious, amnestic, amnestic with "leakage") is extremely varied and defies easy categorization.  Childlike alters are the most frequently seen type of alters.  Members of the psychiatric field debate whether DID can be induced by hypnosis or suggestion or can be misdiagnosed due to either feigning symptoms or malingering.

Greene's treatment in the sexual offender program at Twin Rivers included extensive therapy with M.S. and hypnosis.  According to M.S., Greene manifested more than 20 different identities during therapy.  After Greene's November 1992 release from Twin Rivers, M.S. continued therapy with him in the community.

In spring 1994, after Greene lost his job and his girlfriend ended their relationship, Greene's mental state appeared to deteriorate.  On Monday April 25, Greene told M.S. he wanted to temporarily stop therapy.  M.S. agreed, on the condition that he calls her office everyday.  When Greene called M.S. on Friday, he sounded "very distraught."  Concerned that Greene might be suicidal and need to be hospitalized for psychiatric observation, M.S. decided to visit him.

M.S. arrived at Green's apartment at about 3:00 p.m.  Greene appeared disheveled and his apartment was uncharacteristically untidy.  After several minutes, M.S. realized that Greene had been using drugs.  M.S. testified that at first Bill denied using drugs, but then one of the alters, "Tyrone," emerged and admitted he had been using drugs.  When M.S. got up to leave, Greene blocked her way and told her to take off her shirt.  M.S. tried to spray Greene with the pepper spray attached to her key chain, but as she did so he pushed her hand down.  While trying to back away, M.S. fell backwards on the floor.  Greene then grabbed her shirt and tore it off as she fell.  Greene sat on M.S., straddling her legs.  Greene took off M.S.'s bra and began touching and sucking her breast.  Periodically, Greene would stop and ingest cocaine at the bathroom sink.  Then, he would return and resume the assault on M.S.  At some point while M.S. was crying, she put her hands on her face and the pepper spray got in her eyes.  At that point, M.S. testified that a "protector-alter," Sam, emerged and helped her wash her eyes and hands.  During the assault, Greene also pulled his pants down and touched the end of his penis.

Eventually Greene let M.S. get up and said she could go and gave her a sweatshirt to wear.  But then Greene changed his mind and told her he could not let her leave.  Greene took M.S. into the bedroom, tied her hands and feet with a cord,

REPORT AND RECOMMENDATION
PAGE -3

01      and put duct tape over her mouth. He then took M.S.'s keys and drove away in her car.

02

03      About twenty minutes after Greene left, at approximately 6:00 p.m., M.S. freed herself and walked to a nearby hospital. At approximately 11:30 p.m. that night, Greene was arrested in Everett driving M.S.'s car.

04

05      Greene was charged with first-degree kidnapping and indecent liberties of M.S. In an interview with his expert witness, Dr. Craig LeReau, in preparation for trial, Greene said that several alters were present during the assault of M.S. Greene told Dr. LeReau that when the alters decided to commit suicide, he tied up M.S. so she wouldn't be able to stop him.

06

07

08      Before Greene's first trial, the court held a hearing on the admissibility of DID evidence under Frye [v. United States, 293 F. 1013 (D.C. Cir. 1923)] and ER 702. The court ruled that DID did not satisfy the Frye standard of general acceptance within the scientific community, and the testimony was not helpful under ER 702. The court excluded the DID testimony, including M.S.'s description of Greene's mental state, her description of the alters during the assault, and Greene's testimony about his mental state during the assault. The jury convicted Greene as charged. Based on Greene's prior convictions, the court sentenced him to life imprisonment as a persistent offender under the POAA.

09

10

11

12

13      In Green's first appeal, this court ruled as a matter of law that DID meets the Frye standard and the trial court abused its discretion in excluding DID evidence under ER 702, reversing Greene's conviction and remanding for a new trial. State v. Greene, 92 Wn. App. 80, 960 P.2d 980 (1998). In the opinion, we discuss various approaches to assess insanity based on DID, but given the lack of medical and scientific consensus, this court declined to adopt a particular approach and instead concluded a case-by-case approach was appropriate. Greene, 92 Wn. App. at 101-02.

14

15

16

17      The Washington Supreme Court reversed and affirmed Greene's conviction. The Supreme Court agreed the DID evidence satisfied the Frye standard, but disagreed with this court's conclusion that the trial court abused its discretion in excluding the DID evidence under ER 702. Relying on State v. Wheaton, 121 Wn.2d 347, 850 P.2d 507 (1993), and the testimony in the record, the Court held that the evidence about DID was properly excluded because it was incapable of forensic application and did not assist the trier of fact in determining legal culpability under ER 702. State v. Greene, 139 Wn.2d 64, 74-75, 984 P.2d 1024 91999), cert. denied, 529 U.S. 1090 (2000). The Court concluded that the record provided no basis to decide how DID relates to a determination of legal culpability and that "none of the various approaches have been accepted as producing results capable of reliably helping to resolve questions regarding sanity and/or mental capacity in a legal sense." Greene,

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -4

01    139 Wn.2d at 77.

02          In affirming the U.S. District Court's decision to grant Greene's petition for
habeas corpus, the Ninth Circuit concluded that by preventing M.S. from testifying
03    about her observations concerning DID during the assault and by preventing Greene
from testifying about DID and his state of mind during the assault, the Washington
04    Supreme Court decision infringed on Greene's constitutional right to present an
insanity defense. Greene v. Lambert, 288 F.3d 1081, 1091 (9th Cir. 2002). While the
05    Ninth Circuit did not disturb the Washington Supreme Court's ER 702 analysis and
its conclusion that the expert testimony was not helpful to the trier of fact, the Court
06    recognized that "requiring the state court to permit DID evidence from the victim and
the Petitioner may have the consequence of requiring expert testimony to provide
07    context for the finder of fact." Greene, 288 F.3d at 1093.

08          Greene's second trial took place in 2003.  The defense theory was that
because of DID, Greene was insane at the time of the assault and was not able to form
09    the requisite intent to commit the charged crimes.  During the five-week trial, both
parties presented extensive testimony regarding DID.  Greene presented the expert
10    testimony of Dr. LeReau and Dr. Marlene Steinberg.  The two experts expressed the
opinion that Greene has DID and is not feigning symptoms or malingering.  M.S.
11    testified about her observations and her opinion that an alter was in control of
Greene's actions during the assault.  Greene did not testify.

12

13          The State vigorously contested Greene's DID diagnosis.  The State's three
expert witnesses each testified that Greene most likely did not have DID.  One of the
14    State's experts, Dr. Robert Olsen, had previously testified on Greene's behalf in the
first trial.  Dr. Olsen was originally designated as an expert witness by Greene in the
15    second trial.  But after evaluating Greene again, Dr. Olsen concluded Greene had
"fooled [him]" and agreed to testify on behalf of the State at his own expense.

16          The State also presented the testimony of several lay witnesses who had spent
time with Greene.  The lay witnesses each testified that Greene manifested no
17    symptoms that were consistent with DID before he learned about DID from M.S.
The State also presented the testimony of two prior victims of factually similar sexual
18    assaults.  The victims described the sexual assaults and testified that in neither
instance did Green manifest any symptoms consistent with DID.

19

20          The defense initially proposed using the standard WPIC insanity defense jury
instruction, WPIC 20.01.  But after the State submitted supplemental jury instructions
21    for DID, the defense also submitted supplemental instructions.  The supplemental
instructions proposed different approaches for assessing insanity based on DID.  The
22    court declined to use the supplemental instructions.  Instead, the court used the
standard WPIC instruction to instruct the jury on Greene's insanity defense.  Based

REPORT AND RECOMMENDATION
PAGE -5

01    on the testimony concerning Greene's use of cocaine during the assault, the court also
      gave a voluntary intoxication instruction.  The jury convicted Greene as charged.  The
02    court sentenced Greene to life in prison under the POAA.

03    (Dkt. No. 15, Ex. 7 at 2-8 (footnotes omitted).)

04        On November 20, 2006, the Washington Court of Appeals affirmed petitioner's conviction

05    and sentence in an unpublished opinion.  (*Id.*, Ex. 7.)  Petitioner filed a motion for reconsideration

06    in the Court of Appeals, but that motion was denied on December 22, 2006.  (*Id.*, Exs. 8 and 9.)

07    Petitioner next filed a petition for review in the Washington Supreme Court.  (*Id.*, Ex. 10.)  The

08    Supreme Court denied review without comment on December 4, 2007.  (*Id.*, Ex. 12.

09                                    GROUNDS FOR RELIEF

10        Petitioner asserts the following grounds for relief in his federal habeas petition:

11    GROUND ONE:      The state trial court violated my federal constitutional right to due
      process and trial by jury; by refusing to provide proper jury instructions.
12

13    GROUND TWO:      The state trial court violated my federal constitutional rights to due
      process and trial by jury; by issuing confusing and conflicting jury instructions.

14    GROUND THREE:   Impermissibly restricted petitioner's federal constitutional right to
      present a defense of his own choosing and improperly admitted uncharged criminal conduct
15    in its state's case-in-chief.

16    GROUND FOUR:      Denied right to trial by jury when imposing sentence over maximum
      statutory term based on prior convictions.
17

18    (*See* Dkt. No. 5 at 5, 6, 8, and 10.)

19                                        DISCUSSION

20                                     Standard of Review

21        Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

22    petition may be granted with respect to any claim adjudicated on the merits in state court only if

REPORT AND RECOMMENDATION

01  the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly

02  established federal law, as determined by the Supreme Court, or if the decision was based on an

03  unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)

04  (emphasis added).

05       Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

06  court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

07  or if the state court decides a case differently than the Supreme Court has on a set of materially

08  indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

09  application" clause, a federal habeas court may grant the writ only if the state court identifies the

10  correct governing legal principle from the Supreme Court's decisions, but unreasonably applies

11  that principle to the facts of the prisoner's case.  *Id.*  The Supreme Court has made clear that a

12  state court's decision may be overturned only if the application is "objectively unreasonable."

13  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

14       Clearly established federal law, for purposes of AEDPA, means "the governing legal

15  principle or principles set forth by the Supreme Court at the time the state court render[ed] its

16  decision." *Id.* at 71-72.  "If no Supreme Court precedent creates clearly established federal law

17  relating to the legal issue the habeas petitioner raised in state court, the state court's decision

18  cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer

19  v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir.

20  2000)).

21  / / /

22  / / /

REPORT AND RECOMMENDATION
PAGE -7

01                    Grounds One and Two:  Jury Instructions

02          A writ of habeas corpus may issue only upon a finding that a prisoner is "in custody in

03   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

04   It is not the province of federal habeas courts to re-examine state court conclusions regarding

05   matters of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Jeffries v. Blodgett*, 5 F.3d 1180,

06   1192 (9th Cir. 1993),  *cert. denied*, 510 U.S. 1191 (1994).  Accordingly, the fact that a jury

07   instruction is incorrect under state law is not a basis for habeas relief.  *Estelle v. McGuire*, 502

08   U.S. at 67-68.

09          The question that the federal habeas court must address when reviewing claims of

10   instructional error in a state court trial is "whether the ailing instruction by itself so infected the

11   entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141,

12   147 (1973).  Before a federal habeas court can overturn a state court conviction in which an

13   allegedly erroneous instruction was given, "it must be established not merely that the instruction

14   is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which

15   was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp*, 414 U.S. at 146.

16          The Supreme Court has made clear that a challenged instruction "may not be judged in

17   artificial isolation," but must be considered in the context of the instructions as a whole and the

18   trial record.  *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147.)  The Supreme Court has also

19   made clear that when reviewing an ambiguous jury instruction the proper inquiry is "'whether

20   there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that

21   violates the Constitution."  *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370,

22   380 (1990)).

REPORT AND RECOMMENDATION
PAGE -8

01

### 1.   *Insanity Instruction*

02      Petitioner asserts in his first ground for federal habeas relief that the trial court erred when

03  it refused requests by both the prosecution and the defense to supplement the standard WPIC

04  insanity instruction, WPIC 20.01, with more specific language advising the jury how to assess a

05  claim of insanity predicated on DID.

06      The standard WPIC insanity instruction, WPIC 20.01, provides as follows:

07          For a defendant to be found not guilty by reason of insanity you must find that,
         as a result of mental disease or defect, the defendant's mind was affected to such an

08      extent that the defendant was unable to perceive the nature and quality of the acts
         with which the defendant is charged or was unable to tell right from wrong with

09      reference to the particular acts with which the defendant is charged.

10      The state requested that the trial court supplement this standard instruction with

11  instructions describing either a "specific alter" or a "unified approach."  As explained by the Court

12  of Appeals:

13          The "specific alter" approach instructs the jury to focus on the capacity of the alter
         personality who was in "executive control" of Greene's body at the time of the crime.

14      The "unified approach" instructs the jury to assess Greene's mental capacity as a
         whole and ignore the boundaries between specific personalities or alters.

15

16  (Dkt. No. 15, Ex. 7 at 9.)

17      The defense then requested that the court supplemental the standard instruction with

18  instructions describing either a "host personality" or a "specific alter" approach.  As explained by

19  the Court of Appeals, "[t]he 'host approach' (also called a "global" approach) tells the jury to

20  assess whether 'the defendant's host personality' was unable to perceive the nature and quality or

21  the wrongfulness of the acts charged."  (*Id.*, Ex. 7 at 10.)

22      The trial court, in rejecting the proposed supplemental instructions, noted its concern that

REPORT AND RECOMMENDATION
PAGE -9

01   giving those instructions would constitute a comment on the evidence which would be

02   inappropriate.  (*Id*., Ex. 33 at 2913-14.)  The trial court then concluded that the WPIC insanity

03   instruction was a correct statement of the law and that "both sides can adequately argue the

04   theories of their case from this instruction."  (*Id*., Ex. 33 at 2915.)

05          On direct appeal, the Washington Court of Appeals reviewed the expert testimony

06   presented at petitioner's second trial in light of the Washington Supreme Court's prior decisions

07   in *State v. Wheaton*, 121 Wn.2d 347 (1993), and *State v. Greene*, 139 Wn.2d 64 (1999), two of

08   the cases upon which petitioner relies heavily in his arguments to this Court, and concluded that

09   the trial court did not err in refusing to adopt a legal standard and instruct the jury on how to

10   assess petitioner's insanity defense based on DID.

11          As the Court of Appeals explained:

12          [T]he Court concluded in both Wheaton and Greene that adoption of a legal standard
             must be "soundly based" on a record that clearly supports one of the competing
13          approaches for assessing insanity based on DID.  Wheaton, 121 Wn.2d at 356.  Here,
             therefore, we must determine whether, as a matter of law, the record in Greene's
14          second trial provided a sound basis to adopt a particular approach to instruct the jury
             on how to assess insanity predicated on DID.

15                 . . . .

16
             The concerns raised by the Court in Wheaton and Greene regarding the absence of
17          a scientific basis to establish a legal standard to assess the mental state of a defendant
             with DID were not resolved by the testimony in this case.  We conclude the court's
18          decision declining to adopt a DID-specific legal standard and instead instruct the jury
             using the WPIC insanity defense instruction was not error.

19

20   (Dkt. No. 15, Ex. 7 at 15.)

21          While petitioner alleges that the trial court's failure to provide more specific direction to

22   the jury for assessing his insanity claim in light of DID implicates federal constitutional concerns,

REPORT AND RECOMMENDATION
PAGE -10

01  the crux of his argument appears to be that state law required that such an instruction be given and

02  that the Court of Appeals erred in concluding otherwise.  As noted above, it is not the province

03  of federal habeas courts to re-examine state court conclusions regarding matters of state law,

04  *Estelle*, 502 U.S. at 68.  The Washington Court of Appeals concluded that, under state law,

05  petitioner was not entitled to a DID-specific jury instruction.  Petitioner's claim that he was denied

06  his right to such an instruction is therefore not cognizable in these proceedings.

07          Even assuming petitioner's claim can properly be construed as one implicating federal

08  constitutional concerns, petitioner identifies no United States Supreme Court authority which

09  supports the proposition that the failure of the trial court to give a DID specific insanity instruction

10  deprived petitioner of his federal constitutional rights.  Petitioner suggests in his briefing that the

11  trial court's refusal to supplement the standard insanity instruction as requested relieved the state

12  of its burden of proving each element of the charged offense beyond a reasonable doubt.  Jury

13  instructions which relieve the prosecution of this burden violate a defendants due process rights.

14  *Carella v. California*, 491 U.S. 263, 265 (1989).  However, the record does not support the

15  conclusion that the jury instructions, as given, relieved the prosecution of this burden.

16          Petitioner also suggests that the instructions, as given, deprived him of his right to present

17  a defense.  The United States Constitution guarantees criminal defendants "a meaningful

18  opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690

19  (1986)(quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  The record reveals that

20  petitioner was provided such an opportunity.  The refusal of the trial court to give the requested

21  supplemental instructions did not interfere with petitioner's ability to present the evidence

22  necessary to support his insanity defense nor did it preclude the parties from arguing their

REPORT AND RECOMMENDATION
PAGE -11

01 respective theories of the case.

02      The decision of the Washington Court of Appeals with respect to petitioner's first jury

03 instruction claim was neither contrary to, nor did it constitute an unreasonable application of,

04 clearly established federal law as determined by the United States Supreme Court.  Accordingly,

05 petitioner's federal habeas petition should be denied with respect to his first ground for relief.

06      ***2.      Voluntary Act Instruction***

07      Petitioner  asserts in his second ground for federal habeas relief that the trial court erred

08 when it gave a "voluntary act" instruction because the "voluntary act" instruction confused the

09 legal standard for insanity and conflicted with the diminished capacity and voluntary intoxication

10 instructions given by the court.

11      The instruction at issue, WPIC 20.04, provides that "[n]o condition of mind directly

12 induced by the voluntary act of a person charged with a crime constitutes insanity." (Dkt. No. 15,

13 Ex. 2 at 79 (Instruction 25).)  Petitioner's counsel objected to the giving of this instruction on the

14 grounds that there was no evidence that drug use caused petitioner's insanity and that his insanity

15 defense was predicated solely on DID.  (*See* Dkt. No. 15, Ex. 33 at 2917.)  The trial court deemed

16 the instruction appropriate because there was evidence presented at trial that petitioner had

17 ingested cocaine during the course of the assault of M.S. and there was evidence about the effect

18 of the cocaine on petitioner's state of mind.  (*See id.*, Ex. 33 at 2917.)

19      On direct appeal, the Court of Appeals rejected each of petitioner's several arguments in

20 support of his claim that the trial court erred in giving the voluntary act instruction.  The court

21 explained its conclusions as follows:

22

REPORT AND RECOMMENDATION
PAGE -12

01    Below, Greene argued there was no evidence that drug use caused his insanity
and his insanity defense was based solely on DID.  But, based on the evidence at trial,
02    the court decided the jury could conclude Greene was insane because of the effect the
cocaine had on his DID disorder.  Dr. LeReau testified that if Greene was not under
03    the influence of drugs, "he may have been able to avoid the abreaction, but because
of the loosening of boundaries, because of the cocaine intoxication, he wasn't able to
04    stop his disorder from manifesting in the way this manifested that day."  M.S. also
testified that Greene's use of cocaine caused an inability to control "his system."  We
05    conclude the evidence supports the trial court's decision to give the voluntary act
instruction.

06

07    Greene also contends the instruction was inappropriate because of an
exception to the rule that a condition of mind induced by voluntary intoxication can
08    constitute insanity.  Under limited circumstances, when the influence of intoxicants
"triggers an underlying psychotic disorder of a settled nature, such as a delirium
tremens," the instruction is inappropriate.  Wicks, 98 Wn.2d at 623.  In Wicks the
09    exception applied because the defendant was diagnosed with undifferentiated
schizophrenia whose psychosis was caused by the voluntary ingestion of alcohol and
10    drugs.  Here, unlike in Wicks, there was no testimony that Greene's use of cocaine
caused DID.  But Wicks does not hold that a voluntary intoxication instruction is
11    inappropriate where the use of alcohol or drugs exacerbates an underlying disorder.
Wicks, 98 Wn.2d at 625.

12

13    Greene also relies on the "Note on Use" for WPIC 20.04 to argue the
instruction was inappropriate because it was not intended for use in cases where a
14    diminished capacity defense is asserted.  The Note on Use for WPIC 20.04 states that
the instruction should not be used "if the defendant pleads voluntary intoxication or
15    diminished capacity instead of insanity."  But the Note does not address the use of the
instruction where both insanity and diminished capacity are asserted.  We conclude
16    where the defendant, as here, asserts both defenses, it is not error to give the
instruction.

17    Although voluntary intoxication applies differently to insanity and diminished
capacity, the WPIC jury instructions for the two defenses do not create a conflict.
18    For Greene's diminished capacity defense, the court correctly instructed the jury that
it could consider evidence of voluntary intoxication in deciding whether Greene acted
19    with intent or knowledge.  For Greene's insanity defense, the court instructed the jury
that evidence of a mental illness or disorder may be considered in deciding whether
20    Greene had the capacity to form the requisite intent or knowledge.  Based on the
evidence presented, the court also correctly instructed the jury that no "condition of
21    mind directly induced" by drugs or alcohol constitutes insanity.

22    The voluntary act instruction for insanity is an accurate statement of the law

REPORT AND RECOMMENDATION
PAGE -13

01  and was supported by the evidence.  Here, the voluntary act instruction for insanity
    did not conflict with the diminished capacity instruction and the court did not err in
02  giving the instruction.

03  (Dkt. No. 15, Ex. 7 at 16-19 (footnotes omitted).)

04          The Court of Appeals' conclusion that the voluntary act instruction was an accurate

05  statement of state law, and was appropriately given in light of the evidence presented at

06  petitioner's trial, may not be re-examined by this Court on federal habeas review.  *See Estelle*, 502

07  U.S. at 68.  Petitioner's suggestion that the instructions, as given, were confusing to the jury and

08  therefore undermined his right to a fair trial is not borne out by the record.

09          The decision of the Washington Court of Appeals with respect to petitioner's second jury

10  instruction claim was neither contrary to, nor did it constitute an unreasonable application of,

11  clearly established federal law as determined by the United States Supreme Court.  Accordingly,

12  petitioner's federal habeas petition should be denied with respect to his second ground for relief.

13                          Ground Three:  Admissibility of Evidence

14          Petitioner asserts in his third ground for federal habeas relief that the trial court improperly

15  admitted evidence of uncharged criminal conduct in the state's case-in-chief, thereby restricting

16  petitioner's right to present the defense of his own choosing.  At issue here is evidence regarding

17  two prior sexual assaults committed by petitioner.  Prior to trial, defense counsel stipulated that

18  the evidence was admissible.  (*See* Dkt. No. 15, Ex. 15 at 53-54.)  However, when the state called

19  the victim of one of the prior sexual assaults, B.B., as its first witness, defense counsel objected.

20  (*See id.*, Ex. 15 at 51-53.)

21          Defense counsel agreed that the testimony was admissible to establish petitioner's

22  knowledge and intent, but argued that it was unfairly prejudicial to permit this witness to testify

REPORT AND RECOMMENDATION
PAGE -14

01   prior to the defense putting on any evidence of insanity.  (*Id.*, Ex. 15 at 65.)  The defense position

02   was that the evidence was admissible only in the state's rebuttal case.  The trial court disagreed

03   with the defense argument, ruling that the evidence of the prior sexual assaults was admissible

04   under Washington Evidence Rule 404(b) for the purpose of establishing knowledge and intent,

05   both of which were elements of the charged offenses which the state had the burden of proving

06   beyond a reasonable doubt.[1]  (*Id.*, Ex. 15 at 66.)

07           The Washington Court of Appeals, on direct review, rejected petitioner's contention that

08   the trial court abused its discretion by prematurely admitting ER 404(b) rebuttal evidence and

09   unfairly dictating the defense strategy.  The Court of Appeals noted that the trial court admitted

10   the evidence of the prior sexual assaults as evidence of intent and knowledge under ER 404(b) and

11   not as rebuttal evidence.  (*Id.*, Ex. 7 at 20.)  The Court of Appeals concluded that the trial court

12   applied the proper standard in evaluating the admissibility of the evidence and did not abuse its

13   discretion in admitting the evidence of the prior assaults during the state's case-in-chief.  (Dkt. No.

14   15, Ex. 7 at 19-21.)

15           Federal habeas review of state court evidentiary rulings is strictly circumscribed.  *See*

16   *Marshall v. Lonberger,* 459 U.S. 422, 438 (1983).  As noted above, "it is not the province of a

17   federal habeas court to reexamine state court determinations on state law questions." *Estelle*, 502

18   U.S. at 68.  Only if an evidentiary ruling rises to the level of a constitutional violation is it

19

20         [1] Washington Evidence Rule 404(b) provides as follows:

21         Evidence of other crimes, wrongs, or acts is not admissible to prove the character of
        a person in order to show action in conformity therewith.  It may, however, be

22         admissible for other purposes, such as proof of motive, opportunity, intent,
        preparation, plan, knowledge, identity, or absence of mistake or accident.

REPORT AND RECOMMENDATION
PAGE -15

01   cognizable on habeas review. *See id.* at 67-68.

02        The trial court's ruling that the evidence of petitioner's prior crimes was admissible during

03 the state's case-in-chief does not implicate federal constitutional concerns. Petitioner cites to no

04 clearly established federal law which would have required the prosecution to defer presentation

05 of the evidence until its rebuttal case where, as here, the evidence was admissible under state law

06 to establish elements of the charged offenses. Accordingly, the decision of the Washington Court

07 of Appeals rejecting petitioner's challenge to the evidentiary ruling of the trial court was neither

08 contrary to, nor did it constitute an unreasonable application of, federal law as established by the

09 United States Supreme Court. Petitioner's federal habeas petition should therefore be denied with

10 respect to his third ground for relief.

11 <u>Ground Four: Constitutionality of Sentence</u>

12        Petitioner asserts in his final ground for federal habeas relief that his federal constitutional

13 rights were violated when the trial court imposed a sentence over the maximum statutory term

14 based upon facts which were not found by a jury beyond a reasonable doubt.

15        Petitioner was sentenced to a term of life imprisonment without the possibility of parole

16 under Washington's Persistent Offender Accountability Act ("POAA"). The POAA mandates that

17 such a sentence be imposed when an offender who is convicted of any felony considered a "most

18 serious offense" has two or more prior convictions of felonies that would be considered "most

19 serious offenses" under the laws of the State of Washington. *See* RCW 9.94A.030(32) and RCW

20 9.94A.570. The trial court found that petitioner had two such prior convictions and imposed the

21 sentence required by state law.

22        Petitioner complains that because his sentence was based upon facts found by the trial

REPORT AND RECOMMENDATION
PAGE -16

01  court by a preponderance of the evidence and not facts found by a jury beyond a reasonable doubt,

02  his sentence violates the rules announced in the line of cases beginning with *Apprendi v. New*

03  *Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely*

04  *v. Washington*, 542 U.S. 296 (2004).  In  *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the

05  Supreme Court held that *"[o]ther than the fact of a prior conviction*, any fact that increases the

06  penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

07  proved beyond a reasonable doubt."  *Id.* at 490 (emphasis added).  While *Ring* and *Blakely*,

08  extended and clarified *Apprendi*, neither case abandoned the exception identified in *Apprendi*

09  permitting increased sentences based upon the fact of a prior conviction.

10      The Washington Court of Appeals rejected petitioner's *Apprendi* claim, holding that

11  "[u]nder controlling precedent, Greene was not entitled to a jury determination of whether his

12  prior convictions qualified for purposes of the POAA."  (Dkt. No. 15, Ex. 7 at 21.)  Petitioner

13  identifies no clearly established federal law which requires a jury to decide the fact of a prior

14  conviction which is relied upon by a sentencing court to increase a sentence beyond the statutory

15  maximum.  Thus, the Washington Court of Appeals decision rejecting petitioner's sentencing claim

16  was neither contrary to, nor did it constitute an unreasonable application of, clearly established

17  federal law.  Accordingly, petitioner's federal habeas petition should be denied with respect to his

18  final ground for relief.

19                                         <u>CONCLUSION</u>

20      Petitioner's claims challenging his convictions for indecent liberties and kidnaping and his

21  life sentence under the POAA lack merit.  This Court therefore recommends that petitioner's

22  petition for writ of habeas corpus be denied and the action be dismissed with prejudice.  A

01 proposed order accompanies this Report and Recommendation.

02        DATED this 23rd day of June, 2008.


04        Mary Alice Theiler
          United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -18